Barry L. COX and Janis
L. Cox, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 12–376T.

United States Court of Federal Claims.

June 22, 2012.

Barry L. Cox and Janis L. Cox, San Tan Valley, AZ, pro se.

Benjamin C. King, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge.

This lawsuit is plaintiffs' latest attempt to avoid the payment of federal income taxes. Because plaintiffs have not alleged any facts or cited any law that would bring their complaint within this court's jurisdiction, summary dismissal is appropriate.

### I. BACKGROUND

According to the available court records,[1] plaintiffs' odyssey began in the late–1990s, when plaintiff Barry L. Cox pled guilty to making a false statement to the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 1001.[2] Mr. Cox's sentence, imposed on May 3, 1999, included incarceration for twelve months and one day and restitution to the IRS in the amount of $232,914. The restitution included the federal income taxes he owed for the 1988, 1989, and 1990 tax years. Mr. Cox appealed the sentence, contending that he had no tax liability for those

---

1. A search of PACER—"an electronic public access service that allows users to obtain case and docket information from federal appellate, district and bankruptcy courts"—revealed multiple civil actions, one criminal action, and one bankruptcy action relevant to this matter.

2. *United States v. Cox,* No. 2:98–cr–00391–SVW (C.D.Cal. filed Apr. 14, 1998).

three years.[3] The United States Court of Appeals for the Ninth Circuit rejected that argument and upheld the sentence.

Upon his release from prison, Mr. Cox filed several Federal Tort Claims Act suits in federal district court against the United States, the IRS, the United States Department of Justice, and the United States Probation Office.[4] All three suits were dismissed, with the district court noting in one of its dismissal orders that Mr. Cox's true intent was to collaterally attack his criminal conviction. Mr. Cox appealed that dismissal order, and the United States Court of Appeals for the Fifth Circuit dismissed the appeal as frivolous.[5] While that appeal was pending, Mr. Cox again attempted to challenge his criminal conviction based on his contention that he had no tax liability for the 1988, 1989, and 1990 tax years.[6] The district court dismissed the suit, finding Mr. Cox's arguments to be frivolous.

In May 2004, the United States filed suit against plaintiffs in federal district court to collect the unpaid taxes for the 1988, 1989, and 1990 tax years.[7] In that suit, the United States sought a judgment that plaintiffs owed back taxes, penalties, and interest in the amount of $320,926. It also sought a judgment that its tax liens were valid, that the tax liens could be foreclosed, that plaintiffs' property could be sold, and that the sale proceeds could be used to pay down plaintiffs' tax debt. As memorialized on the docket and in three reports and recommendations issued by the federal magistrate judge assigned to the case, plaintiffs filed a litany of motions and other documents in an attempt to avoid their tax liability. The district court rejected the arguments contained in those filings, concluding that plaintiffs owed the back taxes described by the United States,

that the United States' tax liens were valid, and that plaintiffs' property could be sold to satisfy their tax debt. As a result, the United States foreclosed on plaintiffs' home, the proceeds were applied to plaintiffs' tax debt, and the district court issued a deficiency judgment against plaintiffs for the balance of that debt—$206,585.79.

In June 2005, while the collection action was pending, plaintiffs filed a voluntary petition for bankruptcy.[8] The IRS filed a proof of claim for, among other things, the back taxes owed by plaintiffs for the 1988, 1989, and 1990 tax years. And, the United States Attorney's Office filed a proof of claim for the restitution owed by Mr. Cox as a result of his criminal conviction, which included the same back taxes sought by the IRS. Throughout the bankruptcy proceedings, plaintiffs continued to advance their argument that they had no tax liability for the 1988, 1989, and 1990 tax years. Plaintiffs eventually voluntarily dismissed their bankruptcy petition. The IRS then sent the bankruptcy trustee a notice of levy with respect to the funds being held by the trustee on plaintiffs' behalf. Plaintiffs challenged the IRS's authority to issue notices of levy, but the bankruptcy court concluded that the notice of levy sent to the trustee was proper and directed the trustee to turn over the funds in his possession to the IRS.

Then, in June 2010, Mr. Cox filed suit in another federal district court against, among others, the United States, the United States Department of the Treasury, the Treasury Inspector General for Tax Administration, and the IRS challenging his income tax liability.[9] The district court rejected Mr. Cox's arguments and dismissed the suit. Plaintiffs subsequently turned their attention to the

---

3. *United States v. Cox*, 225 F.3d 664 (9th Cir. 2000) (unpublished table opinion).

4. *Cox v. United States*, No. 5:01–cv–00708–DK4 (W.D.Tex. filed Aug. 7, 2001); *Cox v. United States*, No. 5:01–cv–00350–HFG (W.D.Tex. filed Apr. 30, 2001); *Cox v. United States*, No. 5:00–cv–01433–HFG (W.D.Tex. filed Dec. 11, 2000).

5. *Cox v. United States*, 48 Fed.Appx. 105 (5th Cir.2002) (unpublished per curiam opinion).

6. *Cox v. United States*, No. 5:02–cv–00468–FB (W.D.Tex. filed May 14, 2002).

7. *United States v. Cox*, No. 5:04–cv–00421–FB (W.D.Tex. filed May 12, 2004).

8. *In re Cox*, No. 05–53666–LMC (Bankr.W.D.Tex. filed June 27, 2005).

9. *Cox v. United States*, No. 2:10–cv–01302–JWS (D.Ariz. filed June 21, 2010).

United States Court of Federal Claims ("Court of Federal Claims").

On June 13, 2012, thirteen years after Mr. Cox was ordered to pay back taxes to the IRS as restitution, plaintiffs filed the instant suit. They allege a wide variety of claims in their rambling, 106–page complaint, but the bottom line is that they do not believe that they are required to pay federal income taxes. They seek actual damages equal to the value of their property levied by the United States, punitive damages, statutory damages, an award for pain and suffering, declaratory and injunctive relief, and attorney's fees and costs. Plaintiffs also demand a jury trial.[10] Notably, plaintiffs do not seek a refund of any income taxes that they have already paid.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

 Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court sua sponte may challenge the existence of subject matter jurisdiction at any time. Folden v. United States, 379 F.3d 1344, 1354 (Fed.Cir.2004).

 When considering whether to dismiss a complaint for lack of jurisdiction, a court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed.Cir. 1995). A pro se plaintiff's complaint, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'...." Hughes v. Rowe,

449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, a pro se plaintiff is not excused from meeting basic jurisdictional requirements. See Henke, 60 F.3d at 799 ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his or her burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir.1988).

### B. The United States as Defendant

 As an initial matter, the court addresses plaintiffs' allegations against the IRS, the commissioner of the IRS, the Financial Management Service of the United States Department of the Treasury, an IRS employee, the Tax Inspector General for Tax Administration, the Tax Division of the United States Department of Justice, and the United States Attorney General. It is well settled that the United States is the only proper defendant in the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1) (2006); R. U.S. Ct. Fed. Cl. 10(a); Stephenson v. United States, 58 Fed.Cl. 186, 190 (2003). It necessarily follows that this court does not possess jurisdiction to hear claims against individual federal government officials. See Brown v. United States, 105 F.3d 621, 624 (Fed.Cir.1997). Indeed, the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, ... and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Accordingly, plaintiffs'

---

10. The court is without authority to grant plaintiffs' request for a jury trial. "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the

Federal Government." Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

claims against all parties except the United States are dismissed for lack of jurisdiction.

### C. Plaintiffs' Allegations

█ Plaintiffs allege that the United States has violated several amendments to the United States Constitution ("Constitution"), a wide range of federal statutes, and a number of federal regulations, clearly disregarding the limited ability of the Court of Federal Claims to entertain suits against the United States. It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *Id.* at 586, 61 S.Ct. 767. The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

█ The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir. 1994) (en banc). Thus, the court analyzes whether the amendments, statutes, and regulations cited by plaintiffs constitute money-mandating sources of jurisdiction.

### 1. Allegations Under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution

█ Plaintiffs allege that the United States violated the rights afforded to them by several amendments to the Constitution. First, they contend that the United States violated their right to redress their grievances under the First Amendment. However, because the First Amendment, standing alone, does not obligate the United States to pay money damages, it cannot serve as the basis for jurisdiction in the Court of Federal Claims. *See United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983).

█ Second, plaintiffs allege that the United States violated their right to due process under the Fifth and Fourteenth Amendments. But because neither Due Process Clause is money-mandating, they do not provide a basis for jurisdiction in this court. *See LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995); *Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir.1988).

█ Third, plaintiffs contend that the requirement to submit an income tax return to the IRS under penalty of perjury violates their right against self-incrimination under the Fifth Amendment. The Fifth Amendment's Self-Incrimination Clause, however, does not provide for money damages and therefore does not constitute a basis for jurisdiction in the Court of Federal Claims. *See Betz v. United States,* 40 Fed.Cl. 286, 292–93 (1998).

█ Finally, plaintiffs contend that the United States' tax liens and levies constitute unreasonable seizures of their property under the Fourth Amendment. But, like the other amendments relied upon by plaintiffs, the Fourth Amendment's Search and Seizure Clause does not mandate the payment of money damages. Therefore, it cannot provide a basis for jurisdiction in the Court of Federal Claims. *See Brown,* 105 F.3d at 623; *cf. Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997) ("The Court of Federal Claims ... does not have jurisdiction to hear ... due process or seizure claims under the Fifth Amendment to the United States Constitution.").

In sum, the court lacks jurisdiction to entertain plaintiffs' constitutional allegations.

### 2. Allegations That May Only Be Entertained in Federal District Court

Plaintiffs next allege that the United States violated a number of statutes and their implementing regulations that provide

for or address civil remedies in federal district court. For example, they assert violations of the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. They also allege violations of 26 U.S.C. § 7433 ("Civil damages for certain unauthorized collection actions"), 26 U.S.C. § 7604 ("Enforcement of summons"), 28 U.S.C. § 754 ("Receivers of property in different districts"), 28 U.S.C. § 1331 ("Federal question"), 28 U.S.C. § 1343 ("Civil rights and elective franchise"), 28 U.S.C. § 1391 ("Venue generally"), and 42 U.S.C. § 1983 ("Civil action for deprivation of rights"). However, the Court of Federal Claims is not a district court. *See Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (per curiam); *Alford v. United States,* 3 Cl.Ct. 229, 230 (1983). Thus, these statutes and regulations do not provide for jurisdiction in this court.

### 3. Allegations of Criminal Conduct

■ Plaintiffs also assert that the United States committed criminal acts and violated federal criminal statutes in administering the federal income tax laws. In particular, they contend that the United States blackmailed judges, IRS criminal investigators, and United States Attorneys, and violated 18 U.S.C. § 872 ("Extortion by officers or employees of the United States") and 18 U.S.C. § 1341 ("Frauds and swindles"). However, the Court of Federal Claims lacks jurisdiction to entertain criminal matters. *See Joshua v. United States,* 17 F.3d 378, 379–80 (Fed.Cir. 1994) (affirming that the Court of Federal Claims had "'no jurisdiction to adjudicate any claims whatsoever under the federal criminal code'"); *Kania v. United States,* 650 F.2d 264, 268 (Ct.Cl.1981) (noting that "the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court"). Thus, the court lacks jurisdiction over these allegations.

### 4. Allegations of Tortious Conduct

■ Next, plaintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception, in administering the federal income tax laws. However, the Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort. *See* 28 U.S.C. § 1491(a)(1); *Brown,* 105 F.3d at 623.

### 5. Allegations of Mismanagement and Incompetence

■ Plaintiffs next assert that the United States is guilty of mismanagement, incompetence, and a betrayal of the public's trust in its administration of federal income tax laws. These allegations generally can be described as breaches of fiduciary duty. However, the mere administration of federal income tax laws does not create a fiduciary relationship between the United States and individual taxpayers because federal income tax laws generally do not designate the United States as a trustee, identify individual taxpayers as beneficiaries, or describe a trust corpus. *See United States v. Mitchell,* 463 U.S. 206, 225, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (noting that a fiduciary relationship arises when there is a common-law trust, *i.e.,* when there is a trustee, a beneficiary, and a trust corpus). Accordingly, there is no legal basis for plaintiffs' contentions. Moreover, to the extent that plaintiffs' allegations regarding a breach of fiduciary duty sound in tort, the court lacks jurisdiction to consider them. *See* 28 U.S.C. § 1491(a)(1); *Brown,* 105 F.3d at 623; *see also Cleveland Chair Co. v. United States,* 557 F.2d 244, 246 (Ct. Cl.1977) ("[P]laintiffs' claim for damages arising out of defendant's breach of a fiduciary duty must be grounded in a contractually based obligation to plaintiffs to succeed here.").

### 6. Remaining Statutory and Regulatory Allegations

■ Plaintiffs also allege violations of various other statutes and their implementing regulations. For example, they allege that the United States violated the Paperwork Reduction Act of 1995, but that statute does not mandate the payment of money damages. *See Pac. Nat'l Cellular v. United States,* 41 Fed.Cl. 20, 30 (1998). They also allege a violation of the Citizens Protection Act of 1998, 28 U.S.C. § 530B, another stat-

ute that does not mandate the payment of money damages. Nor do 28 U.S.C. § 3101 or 28 U.S.C. § 3102, both part of the Federal Debt Collection Procedures Act of 1990, mandate the payment of money damages; indeed, the latter provision merely allows a debtor to seek the reduction or dissolution of a prejudgment attachment in the court where the writ of attachment was authorized. Other statutes cited by plaintiffs that do not mandate the payment of money damages include 28 U.S.C. § 351 ("Complaints; judge defined"), 28 U.S.C. § 364 ("Effect of felony conviction"), and 28 U.S.C. § 959 ("Trustees and receivers suable; management; State laws"). Because none of these statutes is money-mandating, they do not provide a basis for jurisdiction in the Court of Federal Claims.

 Plaintiffs further allege the violation of a number of statutes in the Internal Revenue Code, along with their implementing regulations, that concern tax assessment, tax collection, penalties, liens, and levies. *See, e.g.,* 26 U.S.C. §§ 6201, 6212, 6301, 6303, 6321–6324, 6330–6331, 6334, 6501–6502, 6751, 7401–7403 (2006). However, the court's jurisdiction under the Internal Revenue Code is generally limited to the adjudication of tax refund suits,[11] *see* 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1), and this case is not such a suit. The court therefore lacks jurisdiction over plaintiffs' claims arising under the Internal Revenue Code.

### 7. Collateral Attack on Prior Judgments

In general, plaintiffs' allegations amount to nothing more than a collateral attack on prior judgments establishing their federal income tax liability and permitting the United States to recover those taxes that they have not yet paid. As explained by the United States Supreme Court:

Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ ... [a] collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system.

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 U.S. 18, 27, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Plaintiffs, in each of the previous cases in which they were involved, had the opportunity to appeal the judgments, and they either appealed and lost, or failed to appeal at all. They cannot now attack those judgments in the Court of Federal Claims. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (noting that under the doctrine of issue preclusion, which is also referred to as collateral estoppel, a party is foreclosed from relitigating an issue that has already been decided); *Joshua,* 17 F.3d at 380 ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts ... relating to proceedings before those courts.").

### D. Plaintiffs' Request for Relief

Plaintiffs request several types of relief: a writ of mandamus, declaratory and injunctive relief, and various forms of money damages. However, because plaintiffs have not asserted any claims against the United States over which this court has jurisdiction, they are not entitled to obtain any of their requested relief. Moreover, plaintiffs have not demonstrated that their right to a writ of mandamus is "clear and indisputable," *Kerr v. U.S. Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), and, except in situations not relevant here,[12] the court is not

---

**11.** The Court of Federal Claims possesses jurisdiction to entertain a few other types of tax-related suits, but the statutes authorizing such suits do not apply to this case. *See, e.g.,* 26 U.S.C. § 7428 ("Declaratory judgments relating to status and classification of organizations under section 501(c)(3), etc."); 28 U.S.C. § 1508 ("Jurisdiction for certain partnership proceedings").

**12.** *See* 28 U.S.C. § 1491(a)(2) (providing the court with jurisdiction to issue, "as incident of and collateral to" an award of money damages, "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records"); *id.* (providing the court with jurisdiction to render judgment in nonmonetary disputes arising under the Contract Disputes Act of 1978); *id.* § 1491(b)(2) (providing the court with jurisdic-

authorized to award declaratory or injunctive relief in the absence of an award of money damages, *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir. 1998).

### III. CONCLUSION

The court has combed through plaintiffs' complaint and has not been able to discern any claim over which it could exercise jurisdiction.[13] Accordingly, for the reasons set forth above, the court **DISMISSES** plaintiffs' complaint. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

tion to award declaratory and injunctive relief in bid protests).

**13.** Even if the court possessed jurisdiction over plaintiffs' complaint, almost all of plaintiffs' substantive allegations are frivolous. Indeed, they amount to nothing more than pedestrian tax protestor fare. It is well established that such contentions lack merit.